PHILADELPHIA COUNCIL OF NEIGHBORHOOD ORGANIZATIONS et al., Plaintiffs,

v.

Brock ADAMS et al., Defendants.

Civ. A. No. 77–180.

United States District Court,
E. D. Pennsylvania.

April 12, 1978.

Michael Churchill, Public Interest Law Center of Philadelphia, Harold E. Kohn, Philadelphia, Pa., for plaintiffs.

David W. Marston, U. S. Atty., Robert N. DeLuca, Asst. U. S. Atty., Philadelphia, Pa., for Federal defendants.

Herbert G. Zahn, Asst. Atty. Gen., Philadelphia, Pa., for Commonwealth defendants.

Louis J. Goffman, Bernard Chanin, Wolf, Block, Schorr and Solis-Cohen, Philadelphia, Pa., for City of Philadelphia and Frank L. Rizzo.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiffs brought this action to enjoin the defendants from funding, constructing or in any way proceeding with the construction of the Center City Commuter Rail Connection ("tunnel") connecting the existing Penn Central Suburban Station with a new underground station to be constructed between 10th, 12th, Market and Filbert Streets in Philadelphia, Pennsylvania. In an Opinion filed September 12, 1977, this Court granted defendants' motion for summary judgment, and entered judgment in their favor. Plaintiffs filed a notice of appeal from that judgment on October 25, 1977, their brief was filed with the Court of Appeals on February 24, 1978, and defendants' brief was filed on March 27, 1978. Although no date has been set for the argument, the Court of Appeals has agreed to list the case for disposition on the merits at its earliest convenience. *Philadelphia Council of Neighborhood Organizations v. Coleman,* No. 77–2515 (3d Cir., filed April 7, 1978).

It was not until March 20, 1978 that the plaintiffs filed the motion presently before the Court. They seek an injunction pursuant to Fed.R.Civ.P. 62(c) to enjoin the City of Philadelphia from awarding any construction contracts in connection with the tunnel and the Department of Transportation from approving said contracts pending a determination of the appeal pending before the Court of Appeals. A hearing was held in connection with plaintiffs' motion on March 28, 1978, and, for the reasons hereinafter set forth, the motion will be denied.

Fed.R.Civ.P. 62(c) provides that: When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such

terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

It is well settled by the case law that the party seeking the stay must show (1) that he will likely prevail on the merits of the appeal,[1] (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay. *Long v. Robinson,* 432 F.2d 977, 979 (4th Cir. 1970); *Resident Advisory Board v. Rizzo,* 429 F.Supp. 222, 224 (E.D.Pa.1977). A request for a stay is addressed to the discretion of the court. In connection therewith, the Third Circuit has recently stated that in considering a similar four-prong test in determining whether to grant a preliminary injunction, the district court should realize that

> these [four] factors structure the inquiry, however, no one aspect will necessarily determine its outcome. Rather, proper judgment entails a "delicate balancing" of all elements.

*Constructors Association of Western Pennsylvania v. Kreps,* 573 F.2d 811, 815 (3d Cir. 1978). *See, Evans v. Buchanan,* 424 F.Supp. 875, 879 (D.Del.1976).

### 1. *Likelihood of Success on Appeal*

■ Plaintiffs argue:

> Although Petitioners are not seeking this Court to reconsider its decision or to determine that Petitioners will with a certainty prevail, they believe this Court recognizes that the legal issues presented and determined by it are sufficiently novel and complex that a contrary decision by the appellate court would not be contrary to settled law and that the issues merit an appeal.

The mere fact that an appeal is not frivolous does not satisfy the first criteria for a stay, *i. e.,* that there is a likelihood of success on appeal. In granting judgment for

the defendants we considered each and every allegation of the plaintiffs in their 61 page complaint. The Court found that the decision of the Secretary of Transportation in providing a $240,000,000 grant of federal funds to the City of Philadelphia for the construction of the tunnel did not violate any statutory or constitutional provision. On the basis of our searching and careful review of the administrative record in this case, which contained thousands of pages, we found that the Secretary's decision was not arbitrary, capricious, an abuse of discretion. or otherwise not in accordance with law. Furthermore, the conclusions reached by this Court are supported by the reasoning of the recent Supreme Court decision, *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council,* —— U.S. ——, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978).

### 2. *Irreparable Injury to Plaintiffs*

Plaintiffs contend that they will be irreparably injured should the City award construction contracts prior to determination of their appeal by the Third Circuit. They have not, however, elaborated on how these particular plaintiffs will suffer irreparable injury. Their irreparable injury argument appears to be based solely on the claim that in the event that the Court of Appeals reverses this Court's judgment, there will have been a waste of federal funds in connection with construction contracts which will have been awarded prior to the Court of Appeals' determination. We have considered the alleged irreparable injury to the taxpayers in our discussion of the "Public Interest," *see infra.*

### 3. *Injury to Defendants from a Stay*

Plaintiffs contend that there will be no irreparable injury to the defendants by the issuance of an injunction should the Court of Appeals decide the appeal prior to June 14, 1978. They base this contention on the

---

**1.** There is disagreement among the circuits as to the degree of likelihood. of success which must be shown. *See Resident Advisory Board v. Rizzo,* 429 F.Supp. 222, 224 n. 1 (E.D.Pa. 1977). We do not herein make any determina-tion as to the degree of certainty which must be shown, since we find that plaintiffs have not satisfied even the least rigorous of the standards, *i. e.,* more likelihood of success on appeal.

fact that the bids covering the first phase of construction which have already been submitted to the City commit the bidders to the bid price for a period of 90 days. In this connection, plaintiffs called Bernard Goldentyer, project manager of the tunnel. He testified that a delay in awarding these bids would have a rippling effect and cause delays in the letting of bids covering subsequent phases of construction. He stated further that difficulties could be encountered if the Urban Mass Transportation Administration's appropriation for the tunnel construction was not committed to contracts during this fiscal year. He also pointed out that the current trend in the construction industry shows that construction costs have been increasing at a rate of 8% per year, and that a one year delay in awarding the construction contracts for the first year of work on the tunnel would add approximately $8.8 million per year to the cost of the project during the course of the construction. We find, therefore, that defendants would be substantially harmed by a stay.

### 4. *Public Interest*

Plaintiffs contend that the issuance of a stay is in the public interest since if the contracts are awarded and later rescinded because of a reversal on appeal, taxpayers' money will have been wasted.[2] However, as heretofore pointed out, delays in awarding construction contracts will add millions of dollars to the cost of this project.

Moreover, plaintiff's arguments before this Court in connection with the motion for summary judgment stressed that minority residents would achieve greater benefits if the federal funds committed to the tunnel were used for other programs. However, as was pointed out by the defendants, there is no assurance and little probability that the federal funds committed to the tunnel would be available to the City for any other purpose. It is therefore difficult for the Court to find injury to the people of Phila-

delphia in the event the tunnel is constructed. The tunnel is designed to provide multiple transportation, environmental and developmental benefits to the entire Delaware Valley. Additionally, it will provide employment opportunities and serve to stimulate the economy of the entire area. *Cf. Constructors Association of Western Pennsylvania v. Kreps,* 573 F.2d at 820 (3d Cir. 1978).

 Having carefully considered all the contentions of the plaintiffs, and balanced the equities, we decline to enjoin the City from awarding construction contracts in connection with the tunnel. We also decline to enjoin the Department of Transportation from approving said contracts.

---

2. Mr. Goldentyer did testify that the City's contracts in connection with the tunnel provide that the City can terminate the contract at any time, and that the contractor will be compensated only for work actually performed and will not be entitled to receive lost profits.