**In re REVCO D.S., INC. et al., Debtors.**

**Bankruptcy Nos. 588-1308 to 588-1321, 588-1305, 588-1761 to 588-1812 and 588-1820.**

United States Bankruptcy Court, N.D. Ohio.

July 23, 1990.

John Silas Hopkins, III, Baker & Hostetler, Cleveland, Ohio, for debtors.

Stuart E. Hertzberg, Pepper, Hamilton & Scheetz, Detroit, Mich., for Unsecured Trade Creditors' Committee.

Conrad Morgenstern, Cleveland, Ohio, U.S. Trustee.

Brad Eric Scheler, Fried, Frank, Harris, Shriver & Jacobson, New York City, for Unsecured Noteholders' Committee.

Robert J. White, O'Melveny & Myers, Los Angeles, Cal., for Unofficial Committee of Secured Bank Lenders.

Richard Lieb, William J. Rochelle, Kronish, Lieb, Weiner & Hellman, New York City, for Unofficial Preferred Equity Committee.

Frederick M. Luper, Luper, Wolinetz, Sheriff & Niedenthal, Columbus, Ohio, for Odd Lot Trading, Inc. Creditors Committee.

John R. Lee, S.E.C., Chicago, Ill.

Barry L. Zaretsky, Kelley, Drye & Warren, New York City.

MEMORANDUM OPINION REGARDING EMERGENCY MOTION OF NEW YORK LIFE FOR RELIEF PURSUANT TO BANKRUPTCY RULE 8005

HAROLD F. WHITE, Bankruptcy Judge.

On July 20, 1990, this Court entered an order (the "Order") which denied the Motion of New York Life Insurance Company and New York Life Insurance and Annuity Corporation ("New York Life") requesting authority to commence suit derivatively on behalf of Revco against various LBO participants (the "Motion to Commence Suit") (Relief from Stay Docket No. GG–16). In the Motion to Commence Suit, New York Life had requested authority to commence litigation on certain claims under the Michigan Business Corporation Act (the "Michigan Act") in relation to the 1986 leveraged buyout of the Debtors (the "LBO"). Attached to the Motion to Commence Suit was a draft complaint of the derivative action New York Life sought to file (the "Derivative Complaint"). The statute of limitations to commence litigation on the Michigan Act claims shall expire on July 25, 1990. New York Life has filed a notice of appeal on the Order and now requests this Court by motion filed on July 20, 1990 (the "Emergency Motion") to grant it relief pursuant to Bankruptcy Rule 8005 to allegedly maintain the status quo pending appeal.

The essence of the relief sought in the Emergency Motion is authority for New York Life to file (but not prosecute) the Derivative Complaint in order to toll the statute of limitations so that the Michigan Act claims do not expire while New York Life's appeal is pending.

New York Life further asserts that "the filing of the Derivative Complaint to commence the Derivative Action without more will not reveal any new facts or new positions, and will essentially be a technical step that does nothing more than preserve the Michigan Act claims from destruction by the statute of limitations." *Emergency Motion*, p. 4.

New York Life contends that the legal standard governing this Motion is the "sound discretion of this Court" rather than the traditional preliminary injunction standard of Bankruptcy Rule 8005. *Emergency Motion, p. 7.* New York Life further contends that the controlling principle in this Circuit is that interim relief should issue to preserve causes of action belonging to a chapter 11 debtor and submit in support of its position *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229–31 (6th Cir.1985).

This Court concludes that under either standard, New York Life's Emergency Motion must be denied.

*Judicial Discretion*

New York Life asserts it should be granted relief under the "judicial discretion" standard in order to preserve the status quo and protect the status of all rights of all parties in interest. *In re Smith*, 34 B.R. 144, 146 (Bankr.D.Vt.1983).

New York Life contends that by granting its relief to file the Derivative Complaint the statute of limitations will be tolled and no resulting detriment will incur to the parties in interest. The Court finds New York Life's contentions are without merit.

The Court finds New York Life's assertions that the filing of the Derivative Complaint (without prosecution thereof) shall not adversely affect the interests of the parties in interest is unfounded. At the hearing on the Motion to Commence Suit, Boake A. Sells, chairman and chief executive officer of Revco D.S., Inc., stated that if any litigation on the LBO was filed it will be "disastrous" for Revco's business.

Furthermore, this Court is not satisfied that New York Life may preserve the status quo by filing, *but not prosecuting*, the Derivative Complaint. New York Life presents no authority to this Court to support this novel procedure to preserve its rights on appeal.

New York Life's own memorandum of law regarding Ohio and Michigan requirements to toll the statute of limitations seems to belie this assertion. Under Ohio law the statute of limitations is tolled upon filing a complaint and Ohio Civil Rule 3(A)

permits service within one year after filing. Under Michigan law, the statute of limitations is tolled when "the complaint is filed and a copy of the summons and complaint in good faith, are placed in the hands of an officer for immediate service," provided that such service is obtained within 90 days. Mich.Comp.Laws Ann. § 600.5856 (West 1989). *Emergency Motion*, p. 2.

It appears to this Court that in order to preserve the claims under Michigan law service must be commenced immediately after filing and no later than 90 days after filing, which would be some time in late October 1990 in this case. Once service is made on the numerous defendants in the derivative suit, the individual defendants will surely develop their own legal strategies and even more litigation in this Court or other courts will commence. This Court does not have the authority to control the massive litigation that will erupt after the filing of the Derivative Complaint. Indeed, by filing the Derivative Complaint the business of Revco will be devastated, irreparably harmed and will result in even more litigation.

For the foregoing reasons, this Court concludes that the Emergency Motion must be denied under the judicial discretion standard of Bankruptcy Rule 8005.

*The Preliminary Injunction Standard*

Under the traditional preliminary injunction test, the court considers the following four factors when determining whether a stay on appeal is warranted:

(1) The likelihood that the movant seeking the stay will prevail on the merits of the appeal;

(2) Whether the movant will be subject to irreparable injury if the relief is not granted;

(3) Whether granting the relief will cause substantial harm to the other parties; and

(4) Whether granting the relief would be contrary to the public interest.

*In re Baldwin United Corp.*, 45 B.R. 385 (Bankr.S.D.Ohio 1984).

New York Life submits *DeLorean, supra,* for the proposition that the four preliminary injunction factors are not prerequisites to relief but rather factors to be weighed and balanced by the Court. This Court finds after a review of the four preliminary injunction factors that the relief sought by New York Life should not be granted.

*Likelihood of Success on the Merits*

In denying the Motion to Commence Suit, the Court made the following findings from the bench:

(1) New York Life's active participation in the LBO prohibits it from "fairly and adequately" representing creditors and shareholders, as required by Fed.R.Civ.P. 23.1, in any action based on the LBO; therefore, this Court found that New York Life lacked standing to bring the Derivative Complaint;

(2) The Examiner recommends against bringing any action under the Michigan Act as it is highly unlikely that such an action would be successful, and, even if successful, the Michigan Act claims have little if any incremental value over other relevant fraudulent conveyance claims involving no present statute of limitations problem;[1]

(3) Mr. Sells testified that the Board of Revco and Anac, after being advised by counsel and investment bankers, decided not to commence litigation on the Michigan Act claims as success was remote and the litigation would be time-consuming, disruptive to Revco's business and very expensive.

---

1. On page 7 of New York Life's Memorandum of Law in support of the Emergency Motion, (which was obviously prepared prior to the hearing on the Motion to Commence Suit), states that the Examiner concluded the claims under the Michigan Act are "both viable and valuable". However, this is contrary to the testimony of the Examiner at the hearing and also his conclusion as stated on page 73 of his report which states: "Nevertheless, because of the difficulty of meeting the burden of proof, the uncertainty of achieving a substantial recovery, the fact that little if any incremental benefit is offered over a fraudulent conveyance action, and an adverse effect on plan negotiations would likely result if litigation were commenced, the Examiner concludes that the Michigan actions should not be pursued."

(4) Mr. Sells testified that any litigation would be a "disaster" for Revco's business and the on-going plan negotiations.

In light of the findings by the Court it is highly unlikely that New York Life will be successful on its appeal of the Order.

### Irreparable Harm to Movant

If the Court fails to grant relief to New York Life it will lose the opportunity to bring a derivative suit on the Michigan Act claims on behalf of Revco. However, the Board of Directors of Revco and Anac, as well as the Trade Creditors, Noteholders' Committees and the Banks have determined in their business judgment not to commence litigation under the Michigan Act.

### Substantial Harm to Other Parties

As discussed earlier and illustrated by Mr. Sells' testimony, substantial harm to the debtors would result if New York Life files the Derivative Complaint. Filing of the lawsuit would have "disastrous" effects on Revco and would most likely lead to other claims and actions being filed by the proposed defendants. Filing of the Derivative Complaint could also have negative effects on plan negotiations.

### Contrary to Public Interest

Granting the relief requested by New York Life does not appear to this Court to pose any adverse effects on the public interest.

Based upon the foregoing, this Court concludes that New York Life's request must be denied as there is little chance of success for New York Life on appeal and if the Derivative Complaint is filed it will have disastrous effects on Revco and plan negotiations.

### Additional Concerns

New York Life fails to realistically address the procedural complexities of the practical implementation of the relief it requests.

While New York Life asserts it will file the Derivative Complaint, without further action, it ignores the fact that the filing will result in additional actions being filed in response. At the hearing, New York Life asserted that no further action would result after filing unless by "court order" but New York Life submits no authority for such a procedure.

The Derivative Complaint New York Life seeks to file includes causes of action based on the Michigan Act as well as other claims not time-barred on July 25, 1990. By filing the Derivative Complaint, New York Life will preclude other parties from considering litigating the non-time barred claims. The testimony at the hearing established that the Board of Directors of Revco and Anac are considering whether or not to commence litigation on the state fraudulent conveyance actions which will be time-barred no earlier than November, 1990. Counsel for the Trade Committee also stated at the hearing that the Committee may seek authority to litigate those actions. If New York Life is permitted to file the Derivative Complaint it will, in effect, usurp the powers and duties of the Board and prevent either the Debtors or the Trade Committee, both more suitable plaintiffs, from commencing such actions. If relief is granted, New York Life will, in effect, obtain a position of power and control without even winning the Motion to Commence Suit on its merits. It appears to this Court that New York Life is seeking to obtain the very same relief this Court denied it on July 20, 1990.

An additional consideration is the fact that New York Life has not addressed the issue of filing a bond in order to protect the interests of the debtors and other creditors which claims amount to approximately $1 billion as compared to New York Life, the maximum amount of its interests being $75 million in equity.

For the foregoing reasons, this Court concludes that the Emergency Motion filed by New York Life shall be DENIED. A separate order in accordance with this memorandum opinion shall be entered.